UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:02CR341 (EBB) |
| | : | |
| v. | : | April 12, 2005 |
| | : | |
| ANGEL HERNANDEZ, et al. | : | |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO CONSIDER POTENTIAL CONFLICT OF INTEREST**

By motion filed contemporaneously, the government is seeking consideration of a potential conflict of interest involving Attorney Jeffrey Olgin, counsel for defendant Angel Hernandez. Attorney Olgin previously represented co-defendant Bruce Vetre, who is now a cooperating witness, in an unrelated civil proceeding. The Government believes that a hearing following the procedures set forth in United States v. Curcio, 680 F.2d 881, 885 (2d Cir. 1982), is in order to determine whether a conflict of interest exists; whether such a conflict, if it exists, can be waived; if it can be waived, to inquire whether the relevant parties wish to waive such a conflict; and if they wish to waive such a conflict, to obtain knowing and intelligent waivers from the parties.

**I. BACKGROUND**

In June 2004, the Court held a Curcio hearing relating to the representation of Angel Hernandez by Attorney Olgin. Formerly the General Manager of Shoreline Mitsubishi, Angel Hernandez has been represented by Attorney Olgin for the duration of this case. Because Attorney Olgin had briefly represented co-defendant Richard Dominguez pre-indictment in connection with this case, and because Attorney Olgin had previously represented Anthony Hernandez (the uncharged owner of co-defendant Shoreline Motors Corporation ("Shoreline" or

the "Corporation"), as well as the Corporation itself in unrelated matters, the Government requested the Curcio hearing. After holding the hearing on June 15, 2004, the Court found that any conflict of interest was waivable and that defendants Hernandez, Dominguez, and Shoreline had made knowing and intelligent waivers of any such conflict.[1]

On the evening of April 11, 2005, the Government learned for the first time from co-defendant Bruce Vetre that he, too, at one time was represented by Attorney Olgin in an unrelated civil matter. According to Vetre, he retained Attorney Olgin to represent him in connection with a dispute with a car dealership in Queens, New York, regarding a leased vehicle. From what the Government could gather in its brief discussion with Vetre on this matter, Vetre asserted that the dealership was in the wrong and Vetre therefore secured Attorney Olgin's services in trying to rescind or modify the lease. The Government is unsure whether any civil action was ever filed in connection with that representation.

Based on the foregoing, the Government respectfully requests that the Court conduct an inquiry, following the procedures set forth in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982), to determine the extent of any actual or potential conflict of interest and address whether any such conflict may be validly waived.

---

[1] At the time of this hearing, the Government represented that it was not interested in securing the cooperation of defendant Dominguez. However, in the time that passed between June 2004, and March 2005, the Government's position changed as to defendant Dominguez. On March 30, 2005, Dominguez changed his plea to Counts 1 and 4 of the Third Superseding Indictment and agreed to cooperate with the Government. He is expected to testify at the upcoming trial. In light of this change, it may be appropriate to inquire further concerning Attorney Olgin's prior representation of Dominguez.

## II. GOVERNING LAW

A.  **The Defendants' Right to Conflict-Free Counsel**

It is well established that "a criminal defendant has an absolute right under the Sixth Amendment to be represented by an attorney who has no conflict of interest." United States v. Curcio, 680 F.2d 881, 885 (2d Cir. 1982); see also United States v. Schwarz, 283 F.3d 76, 90 (2d Cir. 2002) ("A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel") (citing cases).[2]  Moreover, apart from the individual right of the defendant, the "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat v. United States, 486 U.S. 153, 160 (1988). A conflict of interest exists when "the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." United States v. Moree, 220 F.3d 65, 69 (2d Cir. 2000) (internal quotation marks and citations omitted).

B.  **The Court's Duty of Inquiry and to Determine Whether Conflicts Are Waiveable**

The Second Circuit has set forth "two distinct obligations" of a trial court in conflict-of-interest situations. United States v. Rogers, 209 F.3d 139, 143 (2d Cir. 2000); United States v. Levy, 25 F.3d 146, 156 (2d Cir. 1994). First, when the Court "is sufficiently apprised of even the possibility of a conflict of interest," the court has an "inquiry" obligation:  to "investigate the

---

[2]  The Connecticut Rules of Professional Conduct, as incorporated by the local rules of this Court, set forth the general rule that a lawyer -- subject to certain limited exceptions -- "shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests." Conn. Rules of Prof. Conduct 1.7(b).

facts and details of the attorney's interest to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict." Id. at 153. "When a possible conflict has been entirely ignored, reversal is automatic." Rogers, 209 F.3d at 143 (internal quotation marks and citation omitted).

Second, if an actual or possible conflict exists, the court then has a "disqualification/waiver" obligation: to determine whether to require disqualification or whether the conflict may be validly waived by the defendant. See Levy, 25 F.3d at 153. The Second Circuit "applies a firm preference for prophylactic inquiry, in which any conflict is identified and either eliminated or knowingly and voluntarily waived pre-trial." Rogers, 209 F.3d at 145.

The Court has "broad latitude" to decide whether to require disqualification. United States ex rel Stewart v. Kelly, 870 F.2d 854, 856 (2d Cir. 1989). So long as an actual or potential conflict "may result in inadequate representation of a defendant or jeopardize the federal court's institutional interest in the rendition of a just verdict, a trial judge has discretion to disqualify an attorney or decline a proffer of waiver." United States v. Fulton, 5 F.3d 605, 612 (2d Cir. 1993). Indeed, "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be [represented by conflict-free counsel]." Wheat, 486 U.S. at 162-63. As the Second Circuit recently explained in Schwarz:

> Not all conflicts may be waived, however. An actual or potential conflict cannot be waived if, in the circumstances of the case, the conflict is of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation.

Schwarz, 283 F.3d at 95.

C.  **Waiver Procedures**

If the Court declines to require disqualification of defense counsel, the Court should ascertain on the record whether the defendant can knowingly and intelligently waive the conflict of interest.  See Levy, 25 F.3d at 153.  A defendant's waiver is knowing and intelligent when a defendant shows that he understands the various risks and pitfalls, that he has the rational ability to make a decision on the basis of this information, and that he unequivocally and clearly expresses his choice to be represented by particular counsel notwithstanding the potential disadvantages.  See Williams v. Meachum, 948 F.2d 863, 866 (2d Cir. 1991); Curcio, 680 F.2d at 888.  On the other hand, the Second Circuit has made it clear that "even a defendant's explicit, in-court waiver of his right to a non-conflicted lawyer [will not be] ... valid and effective" if a trial court "fail[s] to explain adequately the ramifications of the attorney's conflicts" and fails to "provide the defendant with time to reflect on his decision" to continue with a conflicted counsel. Levy, 25 F.3d at 158.

The Court itself plays the "central role in apprising a defendant of his lawyer's conflicts in order to obtain an effective waiver." Id. at 158.  It is not enough to rely solely on the parties' out-of-court certifications of waiver or the assurances of defense counsel that he or she has advised the client of possible conflicts.  To the contrary, the Second Circuit mandates that "[t]he first task of the trial court is to alert the defendants to the substance of the dangers of representation by an attorney having divided loyalties in as much detail as the court's experience and its knowledge of the case will permit." Curcio, 680 F.2d at 888.  This Court is therefore "obligated at the very least to engage [the defendants] personally in a colloquy to determine if

[the defendants are] willing to waive [the] right to a conflict-free lawyer," Levy, 25 F.3d at 155, assuming such actual or potential conflict is found to be present.

As set forth in Curcio:

> [T]he trial court should: (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Curcio, 680 F.2d at 888. There is no particular litany of questions that must be asked to determine whether a defendant has knowingly, intelligently and voluntarily waived his right to conflict free counsel. See United States v. Jenkins, 943 F.2d 167, 176 (2d Cir. 1991). It is sufficient for the Court to elicit from the defendant that he "is aware of and understands the various risks." Curcio, 680 F.2d at 888.

### III. DISCUSSION

In the present case, a potential conflict exists by virtue of Attorney Olgin's former representation of Vetre. The Second Circuit has long recognized the potential conflict of interest arising where defense counsel previously represented potential witnesses, even if such representation concerned unrelated matters. See Olshen v. McMann, 378 F.2d 993, 994 (2d Cir. 1967). In such situations, counsel may be deterred from staging an effective cross-examination given "his reluctance to divulge or to make use of the knowledge derived from the confidential communications of his former client." Id. at 994. There is no doubt that Vetre will be an important witness in this case, in particular against Angel Hernandez. Thus, the Court should inquire whether any information obtained by Olgin about Vetre in connection with his prior

representation of Vetre would potentially hamper Olgin in cross-examining Vetre or alternatively would cause Olgin to violate Vetre's confidences and Olgin's ethical duties as an attorney.  Cf. United States v. Malpiedi, 62 F.3d 465, 468-69 (2d Cir. 1995) (defense counsel's former client was a "key government witness;" defendant had an "interest to have his attorney conduct a thorough, no-holds-barred cross-examination" of the former client, resulting in an actual conflict of interest).

Such potential conflicts, however, need not necessarily require disqualification.  As the Second Circuit has held, representation will not be tainted where counsel did not acquire any confidential information from potential witnesses that might have affected his ability to cross-examine such witnesses and represent his client defendant.  See United States v. Kliti, 156 F.3d 150, 155 (2d Cir. 1998).

In view of these circumstances, the Government requests that the Court hold a hearing and conduct an inquiry to determine whether Attorney Olgin should be disqualified from representing Angel Hernandez.  Should the Court determine that disqualification is not warranted, the Government requests that the Court determine whether any potential conflict of interest inherent in Attorney Olgin's representation of Angel Hernandez may be waived; and, should the relevant parties be willing to execute waivers, that the Court obtain knowing and intelligent waivers from them.[3]

---

[3] The Court may wish to appoint counsel for defendant Angel Hernandez for the purpose of advising him in connection with the hearing.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court consider whether Attorney Olgin's disqualification is warranted and conduct a hearing regarding the referenced potential conflict of interest, and thereafter make the necessary findings and/or rulings to cure any potential conflict.

                              Respectfully submitted,

                              KEVIN J. O'CONNOR
                              UNITED STATES ATTORNEY


                              JONATHAN BIRAN
                              ASSISTANT U.S. ATTORNEY
                              Federal Bar Number ct21922


                              MICHAEL S. McGARRY
                              ASSISTANT U.S. ATTORNEY
                              Federal Bar Number ct25713
                              157 Church Street, 23rd Floor
                              New Haven, CT 06510
                              (203) 821-3700

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing was served this 12th day of April, 2005, on the following counsel of record:

Jeffrey Olgin, Esq. (by hand)
74 Rose Hill Rd.
Branford, CT 06405
(counsel for Angel Hernandez)

Richard S. Cramer (by hand)
449 Silas Deane Highway
Wethersfield, CT 06109
(counsel for David Brown)

Michael S. Hillis, Esq. (by hand)
Dombroski Knapsack & Hillis LLC
129 Whitney Avenue
New Haven, CT 06511
(counsel for Richard Brown)

Jonathan J. Einhorn, Esq. (by hand)
412 Orange Street
New Haven, CT 06511
(counsel for Nelson Datil)

Alan J. Sobol, Esq. (by fax)
O'Connell, Flaherty & Attmore, L.L.C.
280 Trumbull Street
Hartford, CT 06103-3598
(counsel for Bruce Vetre)

_____
JONATHAN BIRAN
ASSISTANT U.S. ATTORNEY