UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NUMBER: 3:02CR341 (EBB) |
| v. | |
| ANGEL HERNANDEZ, <br> DAVID BROWN, <br> RICHARD BROWN, and <br> NELSON DATIL, | August 16, 2005 |
| Defendants. | |

## MOTION TO PERMIT REDIRECT EXAMINATION
## CONCERNING KNOWLEDGE OF RICHARD BROWN'S CRIMINAL CONVICTIONS

### Introduction

During defendant Richard Brown's cross-examination of Danielle Fowler on August 15, 2005, defense counsel asked the witness about Richard Brown's reputation in the community and elicited a favorable response. By doing this, the defendant brought into issue his reputation, and opened the door for the Government to pursue this matter during re-direct examination. *See* Fed. R. Evid. 404(a)(1) & 405(a). Whereas the defendant has presented the jury with his view that he has a good reputation in the community, the Government is fully entitled to present the jury with the *truth* of the matter – that the defendant has been convicted of numerous serious crimes over a lengthy period of time and is undeserving of any favorable reputation. *See Michelson v. United States,* 335 U.S. 469 (1948).

### Background

In the course of cross-examining Danielle Fowler, Attorney Hillis put questions to Ms. Fowler asking if Richard Brown has a good reputation in the community and whether she knows him to be a churchgoing man. Ms. Fowler answered yes to these questions. Although the line of

questioning was brief, it undoubtedly left the jury with the impression that Richard Brown is a moral, devout person who has a good reputation in his community. This testimony is at odds with the reality concerning Richard Brown's substantial criminal history. Mr. Brown has the following convictions on his record:

1. <u>12/20/99 - Dkt No. H15N-CR99-0182965-S</u>

   • Violating a Protective Order - 1 year jail, 1 year suspended, 3 years probation
   • Failure to Appear - 1 year jail, 1 year suspended, 3 years probation

2. <u>12/20/99 - Dkt No. H15N-CR99-0182966-S</u>

   • Violating a Protective Order - 1 year jail, 1 year suspended, 3 years probation
   • Threatening - 1 year jail, 1 year suspended, 3 years probation

3. <u>8/14/91 - Dkt No. H14H-CR91-0407378-S</u>

   • No Pistol Permit - 5 years jail, 2 years to serve, 4 years probation

4. <u>3/7/91 - Dkt No. H14H-CR90-0398002-S</u>

   • Assault 3 - 1 year jail, 1 year suspended, 2 years probation
   • Interfering/Resisting - 1 year jail, 1 year suspended, consecutive, 2 years probation

5. <u>1/29/91 - Dkt No. H14H-CR90- 0390500-S</u>

   • Assault 3 - 3 months jail, 3 months suspended, 6 months probation

6. <u>11/17/89 - Dkt No. H14H-CR88-0348672-S</u>

   • Larceny 3 - 2 years jail, 6 months to serve, 3 years probation
   • Failure to Appear - 2 years jail, 6 months to serve, concurrent, 3 years probation

7. <u>8/14/91 - Dkt No. H14H-CR-0298006-S</u>

   • Failure to Appear - 3 months jail, 3 months suspended, 18 months probation
   • Larceny 6 - 6 months jail, 6 months suspended, 18 months probation
   • Violation of Probation - 9 months jail (not clear whether this was concurrent or

consecutive time)

There also are two convictions on Mr. Brown for crimes under aliases: Obie Brown, Jr. and James Williams.

## **Argument**

When defense counsel asked witness Fowler about the defendant's reputation, counsel made this witness his own. *See* Fed. R. Evid. 611(b). In doing so, he elicited evidence of the defendant's character. *See* Fed. R. Evid. 404(a)(1). As set forth in Rule 404:

> **(a) Character evidence generally.**—Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> **(1) Character of Accused.**—*Evidence of a pertinent trait of character offered by an accused, or by the government to rebut the same* . . . (Emphasis added.)

This exception to the general prohibition against the use of character evidence is designed to allow a defendant who may "have little more than his good name to defend himself" to use his well-earned reputation on his own behalf, against the considerable weight of the Government. *United States v. Pujana-Mena,* 949 F.2d 24, 30 (2d Cir. 1991). Nonetheless, as the rule states on its face, by proceeding on this course, the defendant also opens the door to the prosecution's right to rebut such evidence. *Id.* at 29.

Rule 405, in turn, allows the defendant to present such character evidence by means of reputation testimony:

> **(a) Reputation or opinion.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation . . . . *On cross-examination, inquiry is allowable into relevant specific instances of conduct.* (Emphasis added.)

Again, however, Rule 405(a) clearly contemplates that, where the defendant wishes to introduce reputation evidence of his character, he must do so at his own peril – once the issue is joined, the Government must have the opportunity to challenge such evidence.

In the seminal opinion *Michelson v. United States,* 335 U.S. 469 (1948), the Supreme Court presented a thorough examination of a defendant's historical right to elicit reputation testimony on his own behalf, and of the Government's right to rebut it. In *Michelson* the defendant called several character witnesses, and each was asked about the defendant's good reputation in the community. *Id.* at 471. On cross-examination, the prosecution asked the witnesses if they had heard of the defendant's 20 year-old misdemeanor conviction as well as a 27 year-old arrest. *Id.* at 472. After surveying the historical roots behind the defendant's privilege of being able to offer reputation-testimony, the Supreme Court explained that, in order to prevent the defendant from attaining "an unfair and unreasonable" advantage, that privilege must come with a cost:

> The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him. The prosecution may pursue the inquiry with contradictory witnesses to show that damaging rumors, whether or not well-grounded, were afoot--for it is not the man that he is, but the name that he has which is put in issue.

*Id.* at 478-79 (footnote omitted). Accordingly, the Court held that the prosecution's questions in the case before it were proper.

Here, the defendant chose to ask the witness about his reputation in the community. Indeed, counsel intentionally elicited testimony that the defendant was a church-going person. Such testimony had no conceivable purpose – *and no conceivable relevance* – other than to show that the defendant was a reputable, law abiding, honest, moral person. Once this was done, the jury was presented with a clear version of the defendant's character. Unbeknownst to the jury, however, this version of the defendant's character is false and misleading. As already noted, far from being a law-abiding, honest person, the defendant has several serious convictions, and is undeserving of a good reputation in his community or in the eyes of the jury.

Thus, in order to right the wrong that has been done here, and in order to prevent the jury from being grossly deceived about the defendant's reputation, the Government must be allowed to pursue this matter on redirect examination and to correct the record. As the Second Circuit has held, a defendant's good reputation may be considered by a jury in deliberations, and may push the ultimate balance in the defendant's favor. *Pujana-Mena,* 949 F.2d at 30. Given the potential power of such evidence, the jury cannot be allowed to consider such misleading evidence without correction, and the defendant should not be able to take such "an unfair and unreasonable" advantage from his reputation testimony. *Michelson,* 335 U.S. at 478-79.

## Conclusion

Wherefore, the Government should be allowed to ask Danielle Fowler on redirect examination whether she is aware that the defendant was previously convicted of the crimes listed above.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

/s/
JONATHAN BIRAN
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct21922

/s/
MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct25713
United States Attorney's Office
157 Church Street
New Haven, CT 06510
Tel. (203) 821-3700

CERTIFICATE OF SERVICE

      This is to certify that a copy of the foregoing was served this 15th day of August, 2005, on the following counsel of record by facsimile transmission with an additional copy to be hand delivered on August 16, 2005:

Kurt F. Zimmermann, Esq.
Silverstein and Osach, P.C.
234 Church Street, Suite 903
New Haven, CT 06510
(counsel for Angel Hernandez)

Richard S. Cramer
449 Silas Deane Highway
Wethersfield, CT 06109
(counsel for David Brown)

Michael S. Hillis, Esq.
Dombroski Knapsack & Hillis LLC
129 Whitney Avenue
New Haven, CT 06511
(counsel for Richard Brown)

Jonathan J. Einhorn, Esq.
412 Orange Street
New Haven, CT 06511
(counsel for Nelson Datil)

    /s/_____
JONATHAN BIRAN
ASSISTANT U.S. ATTORNEY