UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| SHORELINE MOTORS, et al. | : | No. 3:02-CR-341 (EBB) |
| **ANGEL HERNANDEZ** | : | |
| | : | November 15, 2005 |

### ANGEL HERNANDEZ'S MEMORANDUM IN SUPPORT
### OF MOTION FOR JUDGMENT OF ACQUITTAL OR,
### IN THE ALTERNATIVE, FOR A NEW TRIAL

ANGEL HERNANDEZ, defendant, respectfully submits the following discussion in support of his motion for judgment of acquittal or for a new trial made pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. At the conclusion of the government's case in chief, the defendants moved for judgment of acquittal. The Court reserved its ruling and requested that counsel submit memoranda in support of their motions. (This memo is being filed beyond the time frame set by the Court and leave to file it late is respectfully requested also).

*Introduction/Background*

On September 7, 2005, a jury found Angel Hernandez guilty on all counts of a 22-count indictment charging him with 21 substantive violations of the federal mail and wire fraud statutes as well as one count of conspiracy to commit mail/wire fraud. It was the government's theory that the alleged fraud scheme had two principal objects: (1) Mr. Hernandez and his co-defendants, all employees at Shoreline Mitsubishi ["Shoreline"], a local new-car dealership, engaged in a scheme to defraud Shoreline's customers, i.e., purchasers of new vehicles, by failing to fully disclose the details of the

purchase transactions, including the terms of the auto-loans the customers obtained from Mitsubishi Motors Credit of America ["MMCA"] to finance their new car purchases; and, (2) The government contended that the defendants' scheme was intended to and did defraud MMCA through the submission by the defendants of loan-applications to MMCA on behalf of the customers which contained false information intended to ensure that MMCA would approve loans for persons to whom MMCA would not otherwise have extended credit (or credit on the same terms).

The particular manner and means by which the defendants were alleged to have defrauded the Shoreline customers included "building into the deals" charges for auto-accessories which were never delivered (e.g., spoilers, audio equipment, etc., called "hard-adds"), charges for extended warranties or service contracts, and/or health and life insurance coverage which customers allegedly did not know they were purchasing or, in a few instances, which the customer claimed at trial to have specifically declined to purchase (called "soft-adds") and, the defendants were alleged to have hidden from the customers the manufacturer's suggested retail price [MSRP] for the cars sold, as well as failed to disclose a critical term of the customers' loan agreements with MMCA, specifically, that the customers' final monthly payment on the car-loan was a "balloon payment" which was substantially larger than all of the other, previous, level monthly payments.

With respect to that part of the alleged scheme which had as its object fraud against MMCA, the thesis advanced by the government at trial was that the defendants' conduct of submitting false loan applications (erroneous employment, income and expense figures for the applicants and/or their co-signatories) to MMCA, caused MMCA to suffer substantial financial losses when some of the customers defaulted on

their car loans and MMCA could not recoup the full amount loaned through repossession of the car, sale of the car at auction, and other collection activity directed at the borrower.

***Motion for acquittal, Rule 29***

*STANDARD OF REVIEW*

>  Federal Rule of Criminal Procedure 29(a) provides, in relevant part:

> > The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

>  And it is well settled that, in evaluating a motion for judgment of acquittal, the

Court:

> > ...must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If [it] concludes that upon the evidence there must be such a doubt in a reasonable mind, [it] must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted.

United States v. Mariani, 725 F2d 862, 865 (2d Cir.1983) (quoting, United States v. Taylor, 464 F2d 240, 243 (2d Cir. 1972)); *accord,* Jackson v. Virginia, 443 U.S. 307, 318-19 n. 11 (1979); United States v. Lieberman, 637 F2d 95, 104-05 (2d Cir. 1980). If the evidence viewed in a light most favorable to the government gives "equal or nearly equal circumstantial support to a theory of guilt or a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt" and the Court should enter a judgment of acquittal. Jackson v. Virginia, 443, U.S. at 318-19; United States v. Reyes, 302 F3d 48, 52-53 (2d Cir. 2002); *See also* United States v. Walker, 191 F3d

326, 333 (2d Cir. 1999). The Court can enter a judgement of acquittal on the grounds of insufficient evidence only if, after reviewing the evidence, both direct and circumstantial, viewed in a light most favorable to the prosecution, including drawing all reasonable inferences in the government's favor, the Court concludes that no rational jury could have found the defendant guilty beyond a reasonable doubt.

**DISCUSSION**

It is axiomatic that the requisite elements of fraud in the context of an alleged scheme such as that charged in the instant case include that the defendant knowingly and with the specific intent to influence the victim, made *a false representation* to the victim and that the falsity concerned a term of the transaction which was *material* to the victims' decision to go ahead with the deal. It is submitted here that judgment of acquittal should be entered on all counts of conviction because the proof at trial was insufficient as a matter of law to prove these requisite elements regarding the alleged fraud against both the customers and MMCA.

<u>*Shoreline customers*</u>

With respect to the alleged fraud against the customers, the proof did not establish that any false representations were made by the defendants because it was conclusively established by the evidence that each and every customer who purchased a car from Shoreline was, in fact, provided with complete disclosure, in writing, of the actual terms of their transaction, including the specifics of the purchase-financing they obtained from MMCA. Each customer-witness who appeared at trial described how they were provided with the documentary version of the terms of the transaction. Each customer-witness identified their signatures on the paper-work generated by the defendants which spelled out the terms of the transactions. The customer-witnesses

acknowledged in their testimony that they were capable of reading the documents or, as happened in one sale, the signatory was accompanied by persons who translated the papers for them. The customer-witnesses admitted that these documents – displayed to them by the government at trial – did in fact accurately set forth all of the material terms of their deal. The customer-witnesses agreed that their signatures, executed at the time of the transaction, served to acknowledge that they had read and fully understood all of the terms of the deal as spelled out in the documents. Images of all of these customer contracts were displayed on the large video screen at trial and it was clear to anyone whose eyes were open that each of the material terms of all the transactions had been disclosed to every customer. Thus, the amount and number of monthly payments, the amount of the final "balloon payment", the actual price being paid for the car, the "hard" and "soft adds" which were being purchased, the interest rate being charged and the principal amount of the loan, and the amount of credit allowed, if any, for a trade-in, etc., were all indicated clearly. Indeed, the customer-witnesses identified markings at various places on their forms as being their initials, signifying that they were agreeing to the term adjacent to their signature or initials.

  The issue of whether or not a claim of false-representation can be sustained in this context was raised during the jury charge-conference (by the Attorney for defendant Richard Brown) and the Court was provided with the Connecticut statutory provision which in effect, states that proof that a "victim" of an alleged verbal mis-representation had subsequently executed a written agreement which fully disclosed all of the material terms of the deal, is virtually precluded from pursuing an action for fraud based upon the alleged falsity of the *verbal* representations. Some of the customer-witnesses explained at trial they did not read the documents, some admitted that they knew they

should have, one customer even asserted that the forms were blank when she signed them (which, of course, was not true because they were forms printed out by the computer system only after the transaction-data had been entered into the computer system).

It is submitted that in the context of a *criminal* fraud charge, where the customers were provided with written disclosure of the terms of the transaction, and where they acknowledged by their signatures to have read and understood the terms, the defendants could not have been found beyond a reasonable doubt by a rational jury to have made any material misrepresentations to the customers. The written contracts constituted complete, truthful disclosure. Most, if not all of the responsibility for a customer's decision to ignore the disclosures should be borne by the customer, and in any event, the undisputed circumstances present in this case should not be held to be sufficient evidence of fraud. Again, the jury could not have found that the defendants made *false* representations to the customers about the terms of their deals when in fact the customers were provided with full, unambiguous, written disclosure of all of the terms of the contracts. Moreover, for the same reason, it is submitted that the jury could not have rationally found that the defendants' alleged *verbal* misrepresentations were *material* to these transactions.

### *Alleged fraud against MMCA*

With respect to the government's contention that the elements of mail and/or wire fraud against MMCA were proven at trial, it is defendant Hernandez's position that a rational jury could not have found the defendants guilty on the record. The evidence presented by the government in support of the MMCA facet of the case can be summarized a follows: Cooperating defendants who had been fellow employees at

Shoreline testified that the Shoreline sales force and sales managers routinely caused customer loan applications to be transmitted to MMCA which contained false information. MMCA representatives testified that the falsities on the applications were material to MMCA's decision to extend financing to the customer, but, the exact way in which the allegedly false information impacted upon MMCA's loan decision could not be explained by the MMCA representatives subpoenaed to testify at trial. The jury only heard testimony that MMCA had its own computerized credit rating formula which took the information from the customer applications as well as other data (such as the customers' TRW, or Equifax, credit rating score) and computed a credit score which was used to determine the maximum amount the customer would be permitted to borrow. Several of the Shoreline customer-witnesses testified that, for a variety of reasons, they defaulted on their car loans from MMCA. These customer-witnesses and the MMCA representatives testified that the defaults led to repossession of the cars and sale of the cars by MMCA at auction, followed by efforts by MMCA to collect any deficiency balance of unpaid principal from the borrower(s). The Court permitted the government to introduce (over objections by the defendants) proof that MMCA suffered a financial loss from this process. Data was displayed to the jury which the government claimed showed the actual amount lost on the defaulted loans for which customers had testified at trial.

      The problem with the government's case is that absolutely no evidence was presented to establish that the allegedly false information transmitted to MMCA on the customers' loan applications affected any particular decision by MMCA to extend credit to any specific Shoreline customer. On this record, the jury could only speculate whether or not the erroneous information on the customer-witnesses' applications had

anything to do with MMCA's decision to extend the credit to any specific Shoreline customer. There was no proof that any specific car loan would *not* have been approved if the information on the application was accurate. There was no evidence from which any causal connection between the incorrect information and the alleged specific defaults and losses to MMCA could be made because there was no showing that MMCA extended the credit to the specific customer-witness in reliance upon specific (or even general) incorrect information. On this record it is submitted, a rational jury could not have found beyond a reasonable doubt that the defendants' alleged offense-conduct in supplying the information to MMCA was in any way *material* to MMCA's decisions to extend the financing, or triggered the defaults, or caused the losses.

In light of the forgoing, it is submitted that judgment of acquittal should be entered as to all 22 counts because the essential elements of the fraud offenses charged were not established by the evidence presented in the government's case in chief.

### *Motion for New Trial, Rule 33*

If the foregoing motion for judgment of acquittal is denied, defendant Angel Hernandez respectfully submits that, because of two circumstances which arose during the trial, whether considered individually or as a matter of their cumulative effect of unfair prejudice to the defendant, the Court should afford the defendant a new trial. These grounds are: (1) The Court should not have permitted the jury to consider any evidence concerning the financial losses incurred by MMCA from loan-defaults by Shoreline customers; and (2) The government's totally inappropriate remarks in rebuttal summation had the effect of informing the jury that it was the defendants' burden to prove that they were not guilty.

**STANDARD OF REVIEW**

Unlike a motion for a judgment of acquittal, a motion for a new trial should be granted if to do so would be in the interest of justice. The Court has broad discretion to set aside a jury verdict and order a new trial when it would avert a perceived miscarriage of justice. United States v. Sanchez, 969 F2d 1409, 1413 (2d Cir. 1992).

**(1) *MMCA Financial Losses Were Not Relevant***

It was the government's position at trial that the jury should be permitted to hear testimony about the loan default sequence which ensued when an MMCA borrower defaulted on their payments. The defendants objected to any such evidence as irrelevant. This financial information was highly prejudicial because the government asked the jury to hold the defendants responsible for this harm. However, the evidence was not probative of anything at issue at trial. The Court ruled that a limited portion of this "loss" evidence could be presented and the government was permitted to elicit from the Shoreline customer-witnesses their experience with MMCA when they defaulted. This included expressions of ire at the defendants for allegedly having tricked them to enter into the financing agreement with MMCA. The customer-witnesses described the hardships which followed from the repossession of their cars, collection procedures, and the negative impact the experience had upon their credit rating. The legal, indeed the criminal responsibility for these problems, was attributed to the defendants by the government. In addition, the Court permitted the government to present testimony from representatives of MMCA which attempted to quantify the financial harm to MMCA purportedly caused by the defendants' scheme.

This highly charged evidence should not have been allowed at trial because the financial harm to MMCA was solely a matter of the customers' breach of their

agreements with MMCA.  The defendants could not control or otherwise affect the decision by a customer to make or not make his or her monthly payment.

The possible reasons or causes of a customer's default could be any one or more of an infinite variety of circumstances, (e.g. health, loss of employment, dissatisfaction with the car, divorce, etc.)  And, it is important to note that it was the monthly payment upon which each customer-witness testified he or she was focused when they signed their contracts; the monthly payment was apparently the key to the transaction and it was not misrepresented. The customers' subsequent failure to meet this primary obligation to MMCA was clearly not the product of any deception by the defendants.

In addition, as discussed earlier in the Rule 29 argument , the MMCA representatives never linked together any particular allegedly false information on a particular application to MMCA's decision to extend the credit to a particular customer. Because of this, it was not proper to permit the government to argue that the defendants' offense conduct resulted in the financial losses.  Moreover, the computations of the purported losses were incomplete and too speculative to have been considered by the jury.  The MMCA representative testified that some of MMCA's claims had been discounted through settlements reached with customers; other bad loans to which MMCA's charts had assigned a dollar value were still, at the time of trial, the subject of deficiency judgment proceedings, the results of which were unknowable. The numerical values for the losses were not based upon a sufficient enough foundation to have had any probative value. But, of course, the attribution of responsibility to the defendants of huge numbers of repossessions and the substantive

resulting financial losses, as was done during the government's summation, had to have had an extremely prejudicial impact on the jury.

For all of the foregoing reasons it is respectfully submitted that the admission into evidence of any information regarding the repossessions and losses incurred by MMCA loans to Shoreline customers was improper, and critically prejudicial to the jury's view of the defendants' innocence.

**(2) *Improper Remarks by Prosecutor in Rebuttal Summation***

The issue of the prosecutor's remarks in his rebuttal summation was the subject of a motion for a mistrial at the time the impropriety occurred. The motion was joined by all defendants and is renewed here by Angel Hernandez.

In response to the initial motion for mistrial, the Court gave two jury instructions which were intended to cure the harm done to the fundamental rights of the defendants by the prosecutor's having, in effect, told the jury that the *defendants* had the burden to disprove that it was their handwriting that appeared on several key government exhibits. During the government's case only two documents were alleged to have been handwritten by Angel Hernandez and they were the only tangible pieces of evidence in support of the government's contention that Angel Hernandez had participated in the preparation and transmission of false customer loan applications to MMCA. When this circumstance is coupled to the very serious questions raised during trial concerning the veracity of the cooperating witness- testimony (including the blatant fumbling of the handwriting issue by Louis Perro) any physical evidence of Angel Hernandez's participation in the scheme had to have been crucial to the jury's deliberations and ultimate verdict regarding Angel Hernandez. The problematic rebuttal argument was the product of the prosecutor's attempt to explain-away the government's failure to

present any testimony and analysis by a handwriting expert which might have lessened the jury's fact-finding responsibilities in this regard. The prosecutor in telling the jury that Nelson Datil's counsel had failed to prove that the handwriting in question was *not* the defendant's engaged in a totally inappropriate attempt to nullify the defendants' entitlement to the presumption of innocence, as guaranteed by the Constitution.

It cannot be reasonably argued by the government that the harm done was limited to the jury's consideration of Mr. Datil's case, nor can it reasonably be viewed as a critical error which was limited to the jury's consideration of the handwriting issues. While, as noted above, the handwriting issue was paramount to the government's case against Angel Hernandez, the general damage to the fairness of the trial was broader. The jury's consideration of many other issues of fact involved a choice between the government-witnesses' version of the events on the one hand, and mere cross-examination and argument on the other. None of the defendants testified. Every allegation of fact which was the subject of government proof was not really the subject of any countervailing testimony and/or exhibits. It is reasonable to assume that the jury felt it was permissible to apply, whether consciously or not, the erroneous standard of proof advanced by the prosecutor to other issues of fact which they resolved in the government's favor and that the verdicts were therefore the product of the government's improper rebuttal summation.

The defendant does not take issue with the Court's attempt to undo the government's misstatements at trial, but, it is respectfully submitted that the damage done by the prosecutor to the fundamental fairness of the proceedings in Angel Hernandez's case was not overcome by the supplemental jury instructions.

**CONCLUSION**

      Wherefore, Angel Hernandez respectfully requests that the Court enter a judgment of acquittal on all courts or afford him a new trial.

                                              Respectfully Submitted,
                                              Angel Hernandez, by

                                              /s/ Kurt F. Zimmermann
                                              Kurt F. Zimmermann
                                              ct00581
                                              Silverstein & Osach, P.C.
                                              234 Church Street, Suite 903
                                              New Haven, CT   06510
                                              email: kzimmermann@so-law.co
                                              (203) 865-0121;  (203) 865 0255 FAX

                                    CERTIFICATE OF SERVICE

      This is to certify that a copy of the foregoing has today been hand-delivered or mailed to:

Jonathan Biran
Michael McGarry
U.S. Attorney's Office
157 Church Street, 23rd Floor
P.O. Box 1824
New Haven, CT 06510

Jonathan J. Einhorn
412 Orange Street
New Haven, CT 06511

Richard S. Cramer
449 Silas Deane Highway
Wethersfield, CT 06109

Michael Stanton Hillis
Dombroski, Knapsack & Hillis
129 Whitney Avenue
New Haven, CT 06510

                                              /s/   Kurt F. Zimmermann
                                              Kurt F. Zimmermann