UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NUMBER: 3:02CR341 (EBB) |
| | : | |
| v. | : | |
| | : | |
| ANGEL HERNANDEZ, DAVID BROWN, | : | |
| RICHARD BROWN and NELSON DATIL | : | |
| | : | |
| Defendants. | : | July 5, 2006 |

**GOVERNMENT'S OPPOSITION TO DEFENDANT HERNANDEZ' MOTION FOR
A PRELIMINARY SENTENCING HEARING REGARDING LOSS**

Defendant Angel Hernandez ("Hernandez"), has moved the Court for a preliminary

sentencing hearing to determine the extent of the financial loss in this matter.  The Government

opposes this motion.

Angel Hernandez, David Brown, Richard Brown, and Nelson Datil ("Datil") were found

guilty by jury verdict.  Hernandez was found guilty on all counts of the Fourth Superseding

Indictment.  Count 1 charged all defendants with conspiracy to commit mail fraud and wire

fraud, in violation of 18 U.S.C. § 371.  Counts 2 through 22 charged Hernandez (in all) and the

other above-named defendants (in selective counts), with substantive counts of mail fraud and

wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, respectively.[1]  Sentencing for Hernandez

is currently set for July 12, 2006.

In opposition to the motion by Hernandez for a preliminary sentencing hearing, the

---

[1]    The jury convicted Hernandez, David Brown, and Datil of all counts in which
they were charged.  The jury convicted Richard Brown of Counts 1, 17, and 18.  The jury
acquitted Richard Brown of Counts 8, 11, and 12.

Government asserts that the Court does not need to hear oral argument or conduct a hearing in order to make a reasonable estimate of the loss. <u>See</u> United States Sentencing Guidelines 2B1.1 Appl. Notes 2(C) ("the Court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence "). Here the loss is calculated at $6.4 million dollars, well within - and even near the top - of the loss range of $2.5 million to $7 million. <u>See</u> 2B1.1(b)(1)(J) and (K). Additionally, this calculation was reached by two methods and is calculated as "actual loss" as compared with "intended loss" which would be much greater.

As set forth above, the Court need only make a reasonable estimate of loss. Moreover, the Court's calculation as to loss, reached with the assistance of the probation office and the Pre Sentence Report, may, for example, be based upon "factors such as the scope and duration of the offense." <u>Id.</u> at note (C)(v). In determining the amount of loss, the Court applies the general sentencing standard of decision, that is "[d]isputed facts relevant to sentencing must be established by a preponderance of the evidence, and the sentencing court may rely upon any information known to it." <u>United States v. Franklyn</u>, 157 F.3d 90, 97 (2d Cir.1998).

In order to assist the Court and the probation office in making a reasonable estimate, the government has provided the probation office with a detailed version of the offense conduct a copy of that multi-page document with multiple exhibits is attached hereto for the benefit of the Court. The loss calculation included in the government's version of the offense conduct is reached two independent ways. The first method was by contacting the primary victim MMCA, and having the victim, through its counsel Day, Berry and Howard, provide its own calculation of its loss. This calculation includes credit for all of the vechile repossessions completed by

MMCA.  See U.S.S.G. 2B1.1 appl. notes 2(E)(ii) (2001).

The second way the loss was determined was based on the evidence gathered during the investigation and testimony at trial.  For instance, at trial, the Government introduced substantial evidence of the extent of the fraud.  Five former employees of the dealership (Bruce Vetre, Jose Espinosa, Louis Pierro, James Clanton, and Jose Concepcion), having previously pleaded guilty to conspiracy charges, testified about the workings of the conspiracy, which included a plan to defraud both Mitsubishi Motors Credit of America, Inc. ("Mitsubishi Credit") and Shoreline Mitsubishi's customers.  As to the fraud on Mitsubishi Credit, Bruce Vetre testified that Angel Hernandez told him to enhance the income on almost every deal;[2] and James Clanton testified that the income in every deal was changed.[3]  Moreover,  Jose Concepcion stated in a pre-trial interview that in his estimate at least 50% of all deals had increased incomes.[4]  Also at trial, the Government presented evidence concerning more than 25 specific car purchases where false information about customers' income, rent or other material information was provided to Mitsubishi Credit.

In addition, the government introduced volumes of evidence establishing that in many instances the conspirators charged customers for CD changers and other optional items when no such equipment had been added to the car and that in other instances, when CD changers or other

---

[2]      Testimony of Bruce Vetre, Aug. 11, 2005, at 33, ln 6-15, attached as Exh. "E." to government's version of offense conduct).

[3]      Testimony of James Clanton, Aug. 23, 2005, at 99, ln 3-19, attached as Exh. "F." to government's version of offense conduct)

[4]      Jose Concepcion stated that he believed the fraud rate was 50 %, i.e., 50% of the deals submitted to MMCA had false information on them.  (Concepcion 302 10/15/04, attached as Exh. "D." to government's version of offense conduct)

optional items were actually installed, members of the conspiracy told the customers that the items were being included "free of charge," when in fact the transaction paperwork reflects that they were charged for those items and the funds advanced by MMCA included funding for those "free" items.  Furthermore, it was proven at trial that Hernandez, David Brown, and others frequently pocketed cash down payments that the customers provided for their purchases.   In sum, there was overwhelming evidence presented at trial that a conspiracy existed at Shoreline Mitsubishi to defraud both MMCA and hundreds of Shoreline Mitsubishi's customers; and that the loss reached into the millions of dollars.

Finally, Hernandez has not demonstrated what would be gained by having a hearing on the matter that could not be accomplished by way of written submission.  Any argument that the loss amount overstates the harm – which it does not– could be advanced in writing as well.  To that end, the Government has attached hereto a lengthy and detailed version of offense conduct that clearly sets forth the loss amount.  Counsel for Mr. Hernandez was provided with the same information some time ago.

## CONCLUSION

For the foregoing reasons, the Court should deny defendant Hernandez's motion for a preliminary sentencing hearing.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


 /s/
MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct25713
157 CHURCH STREET
NEW HAVEN, CONNECTICUT 06510
(203) 821-3700
Email: michael.mcgarry@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on July 5, 2006, a copy of the foregoing was served by facsimile transmission and U.S. Mail on the following persons:

Robert C. Mirto, Esq.
Mirto, Ketaineck, Barrett & DiCrosta
P.O. Box 428
West Haven, CT 06516
(counsel for David Brown)

Kurt F. Zimmermann, Esq.
Silverstein and Osach, P.C.
234 Church Street, Suite 903
New Haven, CT 06510
(counsel for Angel Hernandez)

Michael S. Hillis, Esq.
Dombroski Knapsack & Hillis LLC
129 Whitney Avenue
New Haven, CT 06511
(counsel for Richard Brown)

Jonathan J. Einhorn, Esq.
412 Orange Street
New Haven, CT 06511
(counsel for Nelson Datil)


_____/s/_____

MICHAEL S. McGARRY
ASSISTANT U.S. ATTORNEY