**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NUMBER:  3:02 CR 341(EBB) |
| | : | |
| SHORELINE MOTORS, et al. | : | July 7, 2006 |
| **ANGEL HERNANDEZ** | : | |
| | : | |

**REPLY TO GOVERNMENT'S OBJECTION TO DEFENDANT'S
MOTION FOR PRELIMINARY SENTENCING HEARING**

The following discussion is submitted on behalf of defendant Angel Hernandez in response to the papers filed by the Government on July 5, 2006, in opposition to the defendant's request for a joint preliminary sentencing hearing. As is explained in the Motion, the defendant's request is intended to enable all of the defendants for whom the issue of "loss" for purposes of the Guidelines has not been resolved, to present their positions to the Court at the same hearing. This procedure would enable the Court to make a finding of the total amount of loss - a sentencing factor common to all of the trial defendants-- in one proceeding. On the other hand, if the loss-issue is addressed at each seperate Rule 32 hearing, the Court and the defendants sentenced first will not have the benefit of the positions and the Government's responses brought forward at the subsequent sentences. It is, of course, also necessary for the Court to determine the extent of the victims' losses for purposes of formulating its order of restitution.

-1-

In its opposition papers, the Government claims that it has provided to the probation office sufficient information and data upon which the Court can make a reasonable estimate of the loss to MMCA. The defendant disagrees. In the defendant's written objections to the initial disclosure of the PSR (in which the Government's loss figure was adopted) the "unreasonableness" of the loss-figure advanced by the Government was explained as follows:

> It is the defendant's position that the loss figure used by the PSR is not supported by proof sufficient to satisfy even the liberal standard which the Commission has deemed applicable: *"the court need only make a reasonable estimate of the loss... based upon available information..."* [Section 2B1.1, *Commentary, Application note* (C).] (note: all references to the manual are to the book which includes amendments effective November, 2001, which the PSR has indicated is applicable to the case.)
>
> Here, of course there was no specific financial loss amount alleged in the indictment. There was no special jury verdict or other finding at trial of any specific financial loss to MMCA or to the Shoreline customer-victims. This is not to suggest that any such jury finding is necessary in making the "advisory" guideline range determination, but it is asserted here that even an estimated loss cannot be reasonably adduced from the trial evidence. As noted above, the loss figure of $6.4 million in the PSR was taken directly from the Government's version of the offense conduct, where it is asserted by the prosecutor that there are three reasons why the $6.4 million figure should be employed, summarized as follows: First, the Government is *confident* that the loss figure reported by MMCA is accurate; Second, the Government says it has calculated an estimated loss of $6.8 million; and Third, the government claims that the other evidence... shows that the $6.4 million figure is ... reasonably accurate... [Government's Statement of Offense Conduct, @ pp. 28-29]. If issues such as the relevance of the Government's "confidence" are put aside, the proposed loss figure is mainly based upon a letter dated April 18, 2006, from MMCA's local counsel to the Government which is attached to the Government's statement as Exhibit B. In the letter, counsel for MMCA states that someone at MMCA has informed the letter's author that someone at MMCA

had determined that the losses which MMCA "encountered"
regarding the Shoreline loan portfolio were "approximately
$6 million more than it should have been diminished [?]
based on the credit quality of these loans." [Letter @ Ex. B
to Government's version]. However, the letter does not
provide any factual under-pinning for the conclusion it
promotes. The defendants have no means to test the validity
of the loss figure. The file *does* include a detailed listing
from MMCA of all new car financing extended to Shoreline
Motors' customers during the term of the scheme, but it
still remains an exercise in conjecture to find a causal
connection between the alleged poor performance of the $52
million loan portfolio and the defendants' offense conduct.
For example, the available data concerning the loans which
went into default does not tell us whether or not they were
loans which were extended by MMCA because of the offense
conduct. If we analyze a hypothetical portfolio of ten car-
loans extended, the loan applications for some of which
included false information, and that out of the 10 loans,
the lender  experienced 3 defaults, with a total financial
loss of $3,000, it still cannot be said that because some of
the information on an unspecified sub-set of the ten loan
applications was false, the $3,000 loss was caused by the
fraud. Moreover, even if one of these three hypothetical
default-loans can be connected to a loan application that
included fraudulent information, it does not necessarily
follow from that fact alone that the default-loan would not
have been extended had accurate information been provided to
the lender. And, there is no basis upon which to conclude
that it was the over-stated credit-worthiness of the
borrower that triggered the default. From the testimony of
the customers at trial, it was apparent that some of the
responsibility for the defaults was indeed unrelated to the
offense conduct.

The $6 million claimed differential in losses was
encountered by MMCA at the same time that MMCA was
aggressively promoting its new, low-monthly payment,
balloon-payment financing; While reference is made to the
higher risk credit extended to Shoreline customers there is
no statistical evidence presented to connect the claimed
differential to the fraud.  Additionally, it is not clear
from the MMCA letter that its collection efforts have been
completed.  Some of the loans apparently have been written-
off, but we cannot tell whether or not MMCA realized any
financial consideration from the transfer or sale of the
default loans to an outside collection company. [Letter from
counsel to Probation dated June 21, 2006, included in the
second disclosure of PSR].

-3-

In essence, the defendant's position is that a loss figure derived from the information and methodologies utilized by the Government is too speculative to satisfy what the defendant has never disputed is a liberal standard of proof, i.e., *reasonable estimate* based on a *preponderance of evidence*, etc. What is lacking in the current computations is *reason*. As noted in the defendant's objections quoted above, the $6.4 million conclusion does not follow as a matter of reasoning from the data and information cited as its source. The data concerning the magnitude of losses from defaults by Shoreline customers' loans from MMCA are not connected by anything but conjecture to the defendant's offense conduct. Moreover, with respect to the letter from MMCA's counsel, it is nothing more than the attorney's report of an opinion offered by someone at MMCA. There is no underlying factual or statistical foundation for the opinion. The substance of opinion is purportedly based upon an analysis of the creditworthiness of the Shoreline customers (which ones ?), and some sort of statistical *comparison* (the methodology of which is not known) of the Shoreline portfolio's performance with the performance of other unidentified loan-portfolios (same or even comparable finance-plans, demographics, etc.?). In the letter, it is reported that MMCA has taken write-offs of approximately $1 million. Is this the appropriate "actual" loss figure ? What is it based upon?.

If the Court concurs that the current record is not sufficient, and if the Government decides to present additional

-4-

evidence, perhaps in the form of testimony, the suggestion made by the Government that no hearing is required is untenable. In addition, it is not clear at this time what the positions of Mr. Hernandez's co-defendants are on the issue of a hearing (although it was represented to the undersigned by Attorney Mirto that he favored the request for a hearing on the common issues), or, on the issue of the proposed loss computation.

The sentencing hearing in Angel Hernandez's case is scheduled to take place on Wednesday July 12, 2006, at 9:00am. Mr. Hernandez, after consultation with the undersigned on these specific issues has no objection to the Court's rescheduling the sentencing so as to permit the resolution of this motion. A waiver of the Speedy Trial Act's sentencing provisions will be filed as soon as practicable, if necessary.

It is submitted that the minimal requirements of due process implicated in every determination of the length of a prison sentence, a criminal fine, and a restitution order, mandate that a more solid core of reasoned analysis in support of the proposed loss-figure be presented.

Wherefore, it is requested that a preliminary sentencing hearing be conducted.

Respectfully submitted,
ANGEL HERNANDEZ, defendant

By:   Kurt F. Zimmermann, his attorney
      Fed. Bar No. ct00581
      SILVERSTEIN & OSACH, P.C.
      234 Church Street
      New Haven, Connecticut
(203) 865-0121, 865-0255 fax; Email: kzimmermann@so-law.com

-6-

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Motion has today, July 6, 2006, been hand delivered or faxed to:

Michael McGarry
U.S. Attorney's Office
157 Church Street, 23rd Floor
P.O. Box 1824
New Haven, CT 06510

Jonathan J. Einhorn
412 Orange Street
New Haven, CT 06511

Robert Mirto [via email]

bob@mkbd.com

Michael Stanton Hillis
Dombroski, Knapsack & Hillis
129 Whitney Avenue
New Haven, CT 06510

Joseph Montessi
U.S. Probation
157 Church St. 22nd flr
New Haven, CT 06510

Kurt F. Zimmermann